## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
Western Division

RECEIVED
2019 SEP 13 PM 1:00
CLERK U.S. DIST. COURT
W.ST. DIST. OF MO
KANSAS CITY MO

Nelsen,                            )
                                   )
      plaintiff              )
                                   )
vs                                 )     Case No.: 4:18-cv-895-RK
                                   )
                                   )
SPLC, et al                        )
                                   )
      defendant             )


### REPLY TO SUGGESTIONS IN OPPOSITION TO MOTION FOR RELIEF


In its Suggestions, Defendant appears to misunderstand my argument.

> *Respectfully, Nelsen's claim of material judicial "mistake" is plainly wrong. The Court did not reject the Sur-Reply because it was docketed on the wrong motion "thread," but rather because it was a sur-reply "filed without leave," (p. 2)*

My argument was not that the Court rejected the Sur-Reply because it was docketed on the wrong motion thread. My argument was that my failure to seek leave to file the Sur-Reply was due to my ignorance as a *pro se* plaintiff, that the Court, in light of that ignorance, had to hew strict or liberal in deciding whether to accept the Sur-Reply, and that, had the Sur-Reply been read as addressing the argument it was written to address, the Court's decision may have been different than it was.

> *As such, there is no basis for relief on a theory of judicial inadvertence. (p. 3)*

What else would we call an inadvertent docket misassignment?

> *Because he fails to demonstrate the exceptional circumstances for the Court to reconsider its ruling to disregard the Sur-Reply, the Motion should be denied. (p. 3)*

If a poor person in the United States is denied justice as a consequence of his poverty against the source of the vile and defamatory falsehoods that rendered him destitute in the first place, a poverty made more crippling by an inadvertent docket misassignment, that would seem to a lot of people to be exceptional circumstances.

There is, as well, a compelling public interest in obtaining judicial sanction against the particular kind of dishonest smear at which Mr Piggott is so adroit. Mr Piggott specializes in stating a defamatory opinion, then following the opinion up with statement of fact as if it is—and most readers will take it as —its proof, but without directly stating it as such.

An example from the Article is the following:

> *"[Nelsen]is certainly sympathetic to the white nationalist cause. In a letter he sent to residents announcing his scheme, Nelsen wrote, "I believe the devastation among white males is the predictable result of decades of white male bashing in popular culture..."*

Offering a possible explanation for the epidemic of suicide and overdose deaths among white males has nothing whatsoever to do with the "cause of white nationalism", whatever that may be, but the average reader will read the above as proof I am certainly sympathetic to it.

Another example from the Article:

> *Nelsen claimed the club is open to all races, but he isn't convincing anyone. Articles on the archived ProjectUSA website by Nelsen include subjects such as "The White Minority."*

Again, an article on an archived website from a decade earlier (which even the indefatigable Deborah Starke Bulloc had failed to unearth) has no relevance to and played no role in the degree of certainty with which the people of Lexington believed the RJBC would be open to all races.

In each example, the statements together are damning and, if stated outright, would sustain a defamation claim, but each separately is non-actionable. Since the statements are actually unrelated, to position them as if one is the "underlying fact" of the other is intentionally deceptive. That deception, if it leaves readers with a false, negative view of the subject, should be actionable.

The chain of statements that are the subject of this motion:

1. that I am "anti-immigrant", which is "proved" by
2. I put up racist billboards, which is "proved" by
3. one billboard featured a white boy

are also examples of this disingenuous technique. But in this case, Piggott screwed up and stated a false

claim by omitting the whole truth of the billboards and the color of the children they featured. By reinstating Counts IV & V, the Court could add a voice of sanction to this unwelcome participant in our increasingly vitriolic and ominous national debate.

Defendant continues

*although the Article accurately described one anti-immigrant billboard featuring a white child by ProjectUSA that was widely considered racist,*

The billboard was not widely considered racist, but that was the goal when the SPLC *called* it racist.

*other billboards featured a black girl. The existence of anti-immigrant billboards featuring a "black girl" is irrelevant to the question of whether that billboard, too, was fairly characterized against immigration; it plainly was given Nelsen's own description of ProjectUSA's mission.*

The Article does *not* characterize the billboards as "against immigration". The Article characterizes the billboards as "racist", then immediately offers the "underlying fact" of the board depicting a white boy

*To the extent the "omission" of ProjectUSA's "black girl" billboards relates to the Article's challenged opinion about racism, that opinion is supported by a variety of other disclosed (and unchallenged) facts in the article.*

I repeat here, once more, the slurs alleging "racism" are not challenged.

*Even if the Court were to reverse itself, and split with a significant body of national authority, to find "anti-immigrant" the kind of characterization subject to empirical proof, the dismissal would stand.*

The important part of my argument is not that "anti-immigrant" is the kind of characterization subject to empirical proof, it is that Piggott supplied what the reader was supposed to believe were the underlying true facts to justify the characterization, but which were, in fact, calculated to mislead the reader into a false impression of my character. The Missouri Supreme Court says it is those underlying facts that are tested for falsity in a defamation case. This is a justifiable and wise standard that provides the maligned a way to defend themselves against skilled character assassins employing the powerful propaganda technique of *non sequitur.*

For the reasons stated above, I respectfully request the Court reinstate Counts IV & V of the Amended Complaint.

9 / 13